## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| JERRY D. ALFORD,<br><br>                  Petitioner,<br><br>vs.<br><br>WARDEN KEITH J. FOLEY,<br><br>                  Respondent. | CASE NO. 5:21-CV-02345<br><br>JUDGE SARA LIOI<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT & RECOMMENDATION** |

Petitioner Jerry D. Alford ("Petitioner" or "Mr. Alford") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  (ECF Doc. 1 ("Petition").)  Mr. Alford filed his Petition pro se on December 10, 2021.[1]  (*Id*. at p. 14.)  His Petition relates to his conviction for murder with a firearm specification and having weapons while under disability, and his related aggregate prison sentence of twenty-one years to life in Summit County Common Pleas Case No. CR-2018-02-0431, following a jury trial.  (ECF Doc. 1.)  Respondent filed his Return of Writ on March 28, 2022.  (ECF Doc. 6.)  Petitioner has not filed a Traverse.

This matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For the reasons set forth in further detail herein, the undersigned recommends that the Court **DENY** Mr. Alford's Petition because his grounds for relief are not cognizable on federal habeas review and/or are without merit.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)). The Petition was docketed on December 15, 2021.  (ECF Doc. 1.)

# I.     Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Ninth District Ohio Court of Appeals summarized the facts and history underlying Mr. Alford's conviction as follows:

> {¶2}  The 57-year-old victim ("D.A.") was shot and killed near the Baho Convenience Store ("the Baho") in Akron on November 16, 2017. Surveillance video from the Baho that evening shows D.A. arriving at the store in a black car, entering the store, making a purchase, and then leaving the store. Two males can be seen entering the store approximately one minute later and loitering near the door. When D.A. exits the store, one of the men looks out the door toward him, and then both men follow out after him as he heads down nearby Oakdale Avenue toward his home. D.A. was shot and killed on Oakdale shortly thereafter, although no one witnessed the actual murder and no surveillance footage of the shooting exists.

> {¶3}  According to Detective Richard Doney of the Akron Police Department, several people came forward in the following days with information regarding the crime. T.T. contacted the police to inform them that he was friends with D.A. and he had seen a man he knew as "Rollie" hiding outside of D.A.'s apartment days before the murder. T.T. spoke to Rollie, and Rollie said he was going to shoot the man who lives there. Knowing that D.A. lived there, T.T. was able to convince Rollie to simply walk away instead. When shown a still photograph of Mr. Alford taken from the Baho surveillance footage, T.T. identified him as the man he knew as Rollie. Next, D.A.'s cousin ("W.A.") told police that he ran into D.A. at a local pharmacy on the day of the murder. W.A. agreed to give D.A. a ride home and, during that ride, D.A. asked W.A. if he had a gun he could borrow because he encountered a man standing outside of his apartment that morning who threatened to shoot him. D.A. asked to be dropped off at the Baho near his home, and when the men pulled into the Baho parking lot D.A. pointed to a man standing outside of the store wearing a gray hat and said, "There's the guy right there who threatened to shoot me." When shown still photographs of two men taken from surveillance footage, W.A. identified Mr. Alford in one of the photos as the man D.A. said had threatened to shoot him that morning. Finally, the victim's neighbor ("T.W.") told police that she was familiar with a man named "Rollie" and had heard that Rollie

was the one who shot D.A. When shown the still photograph of Mr. Alford from the surveillance footage, she identified him as the man she knew as Rollie.

{¶4} Other evidence connected Mr. Alford to the murder as well, including saliva or spit found at the crime scene matching Mr. Alford's DNA and a cell phone found in front of D.A.'s Oakdale apartment containing Mr. Alford's DNA and account information. When police interviewed Mr. Alford, he admitted to being in and out of the Baho several times that night while looking for his cell phone. When police interviewed the other man seen with Mr. Alford in the video ("D.M."), he admitted that he was at the Baho with "Rollie" that night. Mr. Alford was arrested and charged with aggravated murder and other offenses, while D.M. was charged with crimes related to the murder.

*State v. Alford*, 2020-Ohio-1099, ¶¶ 2-4, 2020 WL 1496185, at *1 (Ohio App. Ct. 2020); (ECF Doc. 6-1, pp. 110-12.)

## II.      Procedural Background

### A.      State Court Conviction

On February 27, 2018, the Summit County Grand Jury indicted Mr. Alford on: one count of aggravated murder in violation on R.C. § 2903.01(A), with a firearm specification (Count 1); one count of aggravated murder in violation of R.C. § 2903.01(B), with a firearm specification (Count 2); one count of aggravated robbery in violation of R.C. § 2911.01(A)(1)/(A)(3), with a firearm specification (Count 3); and one count of having weapons while under disability in violation of R.C. § 2923.13(A)(3) (Count 4).  (ECF Doc. 6-1, pp. 5-7.)  On March 2, 2018, Mr. Alford entered a plea of not guilty as to all counts.  (*Id*. at p. 8.)

On June 1, 2018, Mr. Alford filed a motion to suppress evidence of the identification of him as the perpetrator of the offenses charged in the case, asserting that the "process and procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification and as a result a violation of . . . [his] due process rights under the Ohio and United States Constitutions." (ECF Doc. 6-1, pp. 10-13.)  The State filed its response to the motion to suppress on June 8, 2018.  (*Id*. at pp. 14-19.)   On October 30, 2018, the trial

court held a hearing on the motion to suppress.  (ECF Doc. 6-1, p. 20, ECF Doc. 6-2, pp. 125-205.)  On February 25, 2019, the trial court denied the motion to suppress.  (ECF Doc. 6-1, p. 20, ECF Doc. 6-2, pp. 215-19.)  In denying the motion to suppress, the trial court stated:

> At this time, the defendant's motion to suppress is denied, and I will address it in turn. The Court has considered the laws surrounding this issue of suppression. The facts in the case are the identifications of the defendant by numerous people. Let me make sure I put on the record the findings that I made.
>
> Mr. Turner was one of the individuals that identified Mr. Alford. He told Detective Doney that he knew you, Mr. Alford, by your nickname Rollie, I believe is how he identified you. He believed that you made some threats in the days prior to the victim's death. He claimed he saw you hiding outside in the bushes outside the victim's home, and Mr. Turner is a friend of yours. He had a conversation with you allegedly to persuade you not to shoot the victim at issue in this case. Those are the facts as identified in Mr. Turner's identification.
>
> Mr. Alexander was allegedly the victim's cousin . He told Detective Doney that the victim pointed to you as you stood outside the Baho and identified you as the person who had threatened to kill him, and Tynetta Winters was allegedly a neighbor of the victim and saw you outside the victim's home allegedly on a regular basis prior to the killing.
>
> All three witnesses who identified you to that detective were familiar with you prior to confirming your identity through the use of the photograph of this surveillance video, so they all three had the opportunity to visually see you, knew of your physical presence at their home, and had distinct memories of you prior to any identification.
>
> An out-of-court identification of a suspect obviously would be suppressed if the totality of the circumstances indicate that the identification was unreliable. Single photo identifications can be suggestive, but are not necessarily impermissibly suggestive, as your counsel has suggested, of course, if there are other facts from which reliability of the identification can be inferred. So my focus is on the reliability of the identification by all three of those individuals.
>
> Where a witness has already identified a suspect in circumstances which are not impermissibly suggestive, that doesn't necessarily give rise to any irreparable misidentification and that doesn't taint their identification subsequent to that.
>
> So I understand that there was cross-examination about -- with Detective Doney about the use of photo arrays, that no photo array was used for you, and that he didn't particularly know beforehand about you being the same person as the person that was identified as Rollie. The time lapse was something that was discussed by

4

your counsel with Detective Doney and the fact that you were already a suspect; however, none of those facts decrease the reliability of any of those witness identifications of you.

There's no evidence further that the length of time between the date of the homicide and the witness identification, which was six days, impacted the witnesses' memories in any way. So the totality of the circumstances indicate that the three witnesses -- Tyrone Turner, Wayne Alexander, and Tynetta Winters all of whom had some form of prior knowledge of you, reliably identified you to Detective Doney.

And, in fact, there are Courts that have held that a witness' prior knowledge of a defendant actually enhances the reliability of that photo identification. So for those reasons and those findings of fact and conclusions of law, Mr. Alford's motion to suppress is hereby denied.

(ECF Doc. 6-2, pp. 216-19.)

Prior to trial and upon the State's motion, on February 26, 2019, the trial court amended

Count 2 of the indictment to the lesser included offense of murder in violation of R.C. § 2903.02

and dismissed the aggravated robbery charge in Count 3 and the firearm specification in Count 3.

(ECF Doc. 6-1, p. 21.)

The jury trial commenced on February 26, 2019, and continued through February 29,

2019, at which time the jury began their deliberations.  (ECF Doc. 6-1, p. 40.)  On March 4,

2019, the jury returned guilty verdicts as to the murder charge in amended Count 2, the firearm

specification in Count 2, and the having weapons under disability charge in Count 4.  (ECF Doc.

6-2, pp. 1466-67, ECF Doc. 6-1, p. 40.)  The jury found Mr. Alford not guilty of the aggravated

murder charge in Count 1.  (ECF Doc. 6-2, p. 1466, ECF Doc. 6-1, p. 40.)

On March 18, 2019, Mr. Alford filed a motion for new trial pursuant to Crim. R.

33(A)(1), (2), and (3).  (ECF Doc. 6-1, pp. 42-43.)  On April 9, 2019, the State filed its response

to the motion.  (Id. at pp. 44-47.)  The trial court denied the motion for new trial on April 12,

2019, finding his claim that a mistrial was warranted based on irregularity in proceedings during the testimony of an officer and/or based on juror misconduct without merit.  (*Id*. at pp. 48-54.)

On April 17, 2019, the trial court sentenced Mr. Alford to a definite term of life imprisonment with eligibility for parole after 15 years for the murder conviction in amended Count 2, with a mandatory 3-year sentence on the firearm specification to be served prior to and consecutive to the sentence imposed for the murder conviction.  (ECF Doc. 6-1, pp. 56-57.)  The trial court sentenced Mr. Alford to a 3-year sentence for the having weapons under disability conviction in Count 4, to be served consecutive to the sentences imposed in connection with amended Count 2 and the firearm specification.  (*Id*.)  Based on the consecutive sentences imposed, Mr. Alford's aggregate prison sentence was 21 years to life.  (*Id*.)

**B.      Direct Appeal**

On May 14, 2019, Mr. Alford, represented by counsel, filed a notice of appeal with the Ninth District Ohio Court of Appeals.  (ECF Doc. 6-1, p. 59.)  In his appellate brief, filed on October 1, 2019, Mr. Alford raised the following two assignments of error:

1.      The trial court erred in denying appellant's motion to suppress.

2.       The trial court abused its discretion when it denied appellant's motion for a new trial.

(*Id*. at pp. 60-86.)  The State of Ohio filed its appellate brief on November 12, 2019.  (*Id*. at pp. 87-109.)  On March 25, 2020, the court of appeals overruled Mr. Alford's assignments of error and affirmed the judgment of the trial court.  (*Id*. at pp. 110-22.)

On September 21, 2020, Mr. Alford filed a pro se motion for leave to file a delayed appeal in the Supreme Court of Ohio, (ECF Doc. 6-1, pp. 126-50), which the Supreme Court of granted (*id*. at p. 151).  On November 2, 2020, Mr. Alford filed his memorandum in support of jurisdiction, setting forth the following two propositions of law:

1.      The trial court erred in denying appellant's motion to suppress.

2.      The trial court abused its discretion when it denied appellant's motion for new trial.

(*Id*. at pp. 152-81.)  On December 29, 2020, the Supreme Court of Ohio declined to accept

jurisdiction of Mr. Alford's appeal.  (*Id*. at p. 182.)

**C.      Federal Habeas Corpus Petition**

Mr. Alford raises the following two grounds for relief in his Petition:

**GROUND ONE**:  The appellate court failed to recognize the trial court's error in denying appellant's motion to suppress in violation of U.S. Const. Amendments 7 and 14.

**Supporting Facts**:  The procedure that the detective used to identify the petitioner were clearly impermissible and suggestive.  The officers used still photos that were taken from surveillance video footage.  Allowing the surveillance photos to be adduced into evidence, prejudiced the jury by inferring guilt based upon mere presence in the area.

**GROUND TWO**:  The appellate court erred by affirming the trial court's decision in not granting petitioner's motion for new trial in violation of the U.S. Const. Amendments 6, 7 and 14.

**Supporting Facts**: The petitioner suffered prejudice when an officer, testifying at trial, opened up a sealed evidence bag containing the victim's hat.  What was thought to be a piece of the victim's skull "unexpectedly" fell out of the hat and onto the floor.  As the officer proceeded to pick up the fragment, he stated, "That's actually a bone fragment."  The officer was not qualified to make that statement, and the prejudice to the jury was irreversible.

(ECF Doc. 1, pp. 4-7.)

## III.      Law & Analysis

**A.      Standard of Review Under AEDPA**

A federal court is limited to deciding whether a conviction violated the Constitution,

laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (citing 28

U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus

relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted)); *see also Duett v. Warden, Noble Corr. Inst.*, No. 1:19-CV-725, 2020 WL 4933892, at *3 (S.D. Ohio Aug. 24, 2020) (explaining that a "[v]iolation by a State of its own procedural rules does not necessarily constitute a violation of due process").

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)).  Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application shall not be granted unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

8

**B.**      **Ground One**

In his first ground for relief, Mr. Alford argues that federal habeas relief is warranted because the procedure used by the detective to identify him—still photos taken from surveillance video footage—was clearly impermissible and suggestive and prejudicial.  (ECF Doc. 1, p. 4.) He asserts that allowing "still photos that were taken from surveillance video footage" to be used to identify him "prejudiced the jury by inferring guilt based upon mere presence in the area." (*Id*.)   Respondent argues that "[t]o the extent [Mr.] Alford alleges that the photo array did not comply with R.C. § 2933.83,[2] his claim is not cognizable because it challenges state law." (ECF Doc. 6, p. 8.)  Respondent also argues that Mr. Alford's claim that his constitutional due process rights were violated when the trial court failed to suppress the allegedly suggestive photo identifications is without merit because he cannot establish that the state appellate court's determination of the claim was contrary to or an unreasonable application of clearly established federal law.   (*Id*. at pp. 18-24.)

For the reasons explained below, the undersigned concludes that Mr. Alford's first ground for relief is not cognizable on federal habeas review and/or is without merit. Accordingly, the undersigned recommends that the Court **DENY** Ground One.

**1.**      **Legal Standard for Admission of Identification Evidence**

There is no "strict exclusionary rule," *Manson v. Brathwaite*, 432 U.S. 98, 113 (1977), for "[a]n identification infected by improper police influence . . .", *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012); *see also Simmons v. U.S.*, 390 U.S. 377, 384 (1968) (explaining that "[i]nitial identification by photograph" is not prohibited by the constitution).  Instead, as held by the Supreme Court, "each case must be considered on its own facts" and "convictions based on

---

2 R.C. § 2933.83 sets forth the minimum requirements for live lineup or photo lineup procedures.

eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384; *see also Neil v. Biggers*, 409 U.S. 188, 196–97 (1972) (quoting *Simmons*, 390 U.S. at 384)  "[R]eliability is the linchpin in determining the admissibility of identification testimony . . ."  *Manson*, 432 U.S. at 114.  Thus, "a court need not exclude testimony concerning an identification derived from unnecessarily suggestive procedures if the totality of the circumstances indicates that the evidence is reliable."  *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992) (citing *Biggers*, 409 U.S. at 199).

To assess whether a defendant's due process rights have been violated through use of a pretrial identification procedure, courts use a two-step analysis.  *Mills v. Cason*, 572 F.3d 246, 251 (6th Cir. 2009) (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1070–71 (6th Cir. 1994)); *Cornwell v. Bradsha*w, 559 F.3d 398, 413 (6th Cir. 2009).  "First, the court determines whether the procedure was unduly suggestive."  *Mills*, 572 F.3d at 251.  The burden of demonstrating that the procedure was unduly suggestive rests with the defendant.  *Ledbetter*, 35 F.3d at 1071; *see also Cornwell*, 559 F.3d at 415.  When assessing whether a procedure was unduly suggestive, a court considers whether "'the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection.'" *Cornwell*, 559 F.3d at 413 (citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001)).  A court may also consider "the size of the [photographic] array, the manner of its presentation by the officers, and the details of the photographs themselves." *United States v. McComb*, 249 F. App'x 429, 437 (6th Cir. 2007) (quoting *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994) (bracket in original).

"The due process check for reliability . . . comes into play only after the defendant establishes improper police conduct." *Perry*, 565 U.S. at 241. Thus, if a court finds at the first step of the analysis that the procedure was not unduly suggestive due to improper police conduct, the court's inquiry ends. *Howard v. Warden, Lebanon Corr. Inst.*, 519 F. App'x 360, 367 (6th Cir. 2013) ("[A] court should not consider the reliability of eyewitness evidence, i.e., engage in part two of the test, unless the defendant satisfies the requirements of part one by proving that the police employed an unduly suggestive identification procedure.") (citing *Perry*, 565 U.S. at 241–42). If, however, a court concludes "that the identification was unduly suggestive, it then uses five factors set out in *Neil v. Biggers* to evaluate 'the totality of the circumstances to determine whether the identification was nevertheless reliable.'" *Mills*, 572 F.3d at 251 (citing and quoting *Ledbetter*, 35 F.3d at 1071). Those factors include: (1) "the opportunity of the witness to view the criminal at the time of the crime"; (2) "the witness' degree of attention"; (3) "the accuracy of the witness' prior description of the criminal"; (4) "the level of certainty demonstrated by the witness at the confrontation"; and (5) "the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199–200; *see also Manson*, 432 U.S at 114.

## 2. State Court Adjudication of Motion to Suppress Identification Evidence

In its March 25, 2020 opinion affirming Mr. Alford's conviction and sentence, the Ohio court of appeals analyzed his assignment of error alleging that the trial court erred in denying his motion to suppress as follows:

{¶7} In his first assignment of error, Mr. Alford argues that the trial court erred in denying his motion to suppress. We disagree.

{¶8} The Supreme Court of Ohio has stated:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and

11

evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶9} Mr. Alford filed a motion to suppress the witness identifications of him, which were secured through the use of still photographs taken from the Baho surveillance video footage. He argued that the pretrial identification process and procedure used by police were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification in violation of his due process rights. At the suppression hearing, he argued that the police should have used a standard photo array, as the process actually employed by police was unduly suggestive.

{¶10} The trial court held a suppression hearing and later denied Mr. Alford's motion. In a journal entry filed on February 26, 2019, the court stated the motion to suppress was denied based on the findings of fact and conclusions of law it stated on the record at the February 25, 2019, final pretrial. At that pretrial hearing, the court made the following findings of fact. T.T. identified Mr. Alford to Detective Doney by his nickname, "Rollie." He told the detective he was friends with Rollie, he heard Rollie make some threats in the days prior to the victim's death, and he saw Rollie hiding in the bushes outside of the victim's home. T.T. also claimed he tried to persuade Rollie not to shoot the victim. W.A. told Detective Doney that D.A. pointed at Mr. Alford outside of the Baho and identified him as the person who had threatened to kill him. T.W. told Detective Doney that she saw Mr. Alford outside of D.A.'s home on a regular basis prior to the killing. The court found that all three witnesses were familiar with Mr. Alford prior to confirming his identity in the photograph from the surveillance video. All three had the opportunity to visually see Mr. Alford and had distinct memories of him prior to any identification of him. In considering the totality of the circumstances, the trial court concluded that the identifications were reliable, as the witnesses identified Mr. Alford to police merely days after the crime in a manner which was not impermissibly suggestive and did not give rise to any irreparable misidentification.

{¶11} After a complete review of the suppression hearing transcript, this Court accepts the trial court's findings of fact as supported by competent, credible evidence. Accepting those findings as true, we must now independently determine, without deference to the conclusion of the trial court, whether those facts satisfy the applicable legal standard. *See Burnside* at ¶ 8.

{¶12} "A photographic identification procedure is violative of due process of law only if it was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " *State v. Putnam*, 9th Dist. Summit No. 20629, 2002 WL 274459, *2 (Feb. 27, 2002), quoting *Simmons v. United*

*States*, 390 U.S. 377, 384 (1968). "The rationale for excluding a tainted pretrial identification is to protect the defendant from misconduct by the state." *State v. Brown*, 38 Ohio St.3d 305, 310 (1988). When determining whether identification procedures are unnecessarily suggestive such that due process requires suppression of the identification, we engage in a two-part analysis: (1) We first determine whether the identification procedure was unnecessarily suggestive; and (2) if so, we determine whether the identification was ultimately unreliable under all of the circumstances. *State v. Turner*, 9th Dist. Summit No. 28775, 2018-Ohio-3898, ¶ 10. Thus, even if an identification process is unnecessarily suggestive, it does not violate due process if it possesses sufficient indicia of reliability. *State v. Mitchell*, 9th Dist. Summit No. 21413, 2003-Ohio-5614, ¶ 8, citing *State v. Parker*, 53 Ohio St.3d 82, 87 (1990). *See also State v. Allen*, 73 Ohio St.3d 626, 634 (1995) (stating that even if the use of a single photo for identification purposes is suggestive, reliable identification testimony may be admitted regardless of the flaws in the procedure).

{¶13} The facts in Mr. Alford's case are analogous to the facts in our recent decision in *State v. Tyler*, 9th Dist. Summit No. 29225, 2019-Ohio-4661. In *Tyler*, a shooting occurred just outside of an Akron bar, and police reviewed surveillance footage from the bar. *Id.* at ¶ 10. They focused on five unknown individuals, pinpointing one as the shooter, accompanied by four of his friends, and created still photographs of each man from the security footage. *Id.* The police released the stills of the four friends and asked them to come forward, which they all did. *Id.* Each of the four men eventually admitted that they knew the fifth man and provided his name as well as some nicknames. *Id.* The trial court, in denying a motion to suppress those identifications, found that the men's familiarity with Mr. Tyler greatly reduced the chances of a police-induced improper identification, as did the fact that they were with him immediately before and after the incident. *Id. See also State v. Smith*, 11th Dist. Portage No. 2016-P-0074, 2018-Ohio-4799, ¶ 47, quoting *State v. Huff*, 145 Ohio App.3d 555, 564 (1st Dist.2001) (" 'A strong showing of reliability can arise from the fact that a victim knew the perpetrator of a crime before the crime was committed.' "). The court noted that the police were not asking the individuals to identify Mr. Tyler as the shooter—as they already knew who the shooter was—but were only asking the men for his name. *Tyler* at ¶ 11. The court concluded, based on the totality of the circumstances, that the police did not employ an unnecessarily suggestive identification procedure in violation of Mr. Tyler's constitutional rights. *Id.* This Court affirmed on appeal and found Mr. Tyler's argument that the police employed an unduly suggestive identification procedure by only showing one picture of Mr. Tyler, instead of creating an entire photo array, to be misguided. *Id.* at ¶ 12-13.

{¶14} "A suggestive identification procedure is one that suggests to a victim or eyewitness that a specific person is the perpetrator." *Tyler* at ¶ 13. "The law guards against suggestive procedures due to the inherent danger they will result in an unreliable identification, i.e., one that misidentifies the perpetrator due to the state's action." *Id.*, citing *Neil v. Biggers*, 409 U.S. 188, 196-198 (1972). As we determined

in *Tyler*, however, no such danger existed in this case because the police never asked the witnesses to identify Mr. Alford *as the shooter*. *Id.* The police had reviewed the Baho surveillance footage and sought to identify two men seen in the video. Once the witnesses came forward with information about a man who might have been involved in the crime, the police showed the witnesses the still photographs not to identify Mr. Alford as the shooter, but to merely confirm that the man in the photo was the man they were familiar with and were speaking about, i.e., the man T.T. knew as "Rollie" whom he saw hiding outside of D.A.'s apartment and threatening to shoot him days before the murder, the man in the gray hat outside of the Baho that night whom D.A. told W.A. had threatened to shoot him earlier that morning, and the man T.W. knew as "Rollie" in her neighborhood. Because the police did not employ an unnecessarily suggestive procedure to identify Mr. Alford as the shooter, we conclude that the trial court properly denied his motion to suppress. *See id.*

{¶15} Accordingly, Mr. Alford's first assignment of error is overruled.

*Alford*, 2020 WL 1496185, at *2-4; (ECF Doc. 6-1, pp. 112-16.)

As noted above, federal courts are limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle*, 502 U.S. at 67–68; s*ee also Lewis*, 497 U.S. at 780; *Engle*, 456 U.S. at 121 n.21. Thus, to the extent that Mr. Alford's challenge is premised on alleged violations of state laws or state procedural requirements, the undersigned finds Ground One is non-cognizable on federal habeas review.

As it relates to Mr. Alford's claim that the state court's denial of his motion to suppress evidence based on the use of still photographs taken from surveillance video footage was in error and resulted in a violation of his federal constitutional rights to a fair trial, he must establish either that the state court decision adjudicating his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181. Mr. Alford's Petition does not address or establish the foregoing and he did not file a Traverse. Moreover, the undersigned's own review of the state court of

14

appeals' decision demonstrates that the state court appeals' determination that the procedure used by the police in Mr. Alford's case was not unnecessarily suggestive was not contrary to or an unreasonable application of clearly established Federal law and was not based on an unreasonable determination of facts in light of the evidence presented in the state court.

Given the state court of appeals' determination that the procedure used was not unnecessarily suggestive, it was not necessary for the court of appeals to consider the reliability of the eyewitness evidence under the factors set forth in *Biggers*.  *See Howard*, 519 F. App'x at 367 ("[A] court should not consider the reliability of eyewitness evidence, i.e., engage in part two of the test, unless the defendant satisfies the requirements of part one by proving that the police employed an unduly suggestive identification procedure.")  (citing *Perry*, 565 U.S. at 241–42).  Nevertheless, the undersigned observes that Mr. Alford has made no showing that the witnesses' identification of him were not reliable given the totality of the circumstances. Additionally, the factual findings made by the trial court when denying Mr. Alford's motion to suppress (ECF Doc. 6-2, pp. 216-19), which the state court of appeals accepted "as supported by competent, credible evidence" (ECF Doc. 6-1, pp. 113-14, ¶¶ 10-11) further demonstrate the reliability of the identifications.  Those findings included the following:

> All three witnesses who identified [Mr. Alford] to that detective were familiar with [Mr. Alford] prior to confirming [his] identity through the use of the photograph of this surveillance video, so they all three had the opportunity to visually see [him], knew of [his] physical presence at their home, and had distinct memories of [him] prior to any identification.
>
> An out-of-court identification of a suspect obviously would be suppressed if the totality of the circumstances indicate that the identification was unreliable. Single photo identifications can be suggestive, but are not necessarily impermissibly suggestive, as your counsel has suggested, of course, if there are other facts from which reliability of the identification can be inferred. So my focus is on the reliability of the identification by all three of those individuals.

15

Where a witness has already identified a suspect in circumstances which are not impermissibly suggestive, that doesn't necessarily give rise to any irreparable misidentification and that doesn't taint their identification subsequent to that.

So I understand that there was cross-examination about -- with Detective Doney about the use of photo arrays, that no photo array was used for [Mr. Alford], and that he didn't particularly know beforehand about [Mr. Alford] being the same person as the person that was identified as Rollie. The time lapse was something that was discussed by [Mr. Alford's] counsel with Detective Doney and the fact that [he] [was] already a suspect; however, none of those facts decrease the reliability of any of those witness identifications of [Mr. Alford].

There's no evidence further that the length of time between the date of the homicide and the witness identification, which was six days, impacted the witnesses' memories in any way. So the totality of the circumstances indicate that the three witnesses -- Tyrone Turner, Wayne Alexander, and Tynetta Winters all of whom had some form of prior knowledge of [Mr. Alford], reliably identified [him] to Detective Doney.

And, in fact, there are Courts that have held that a witness' prior knowledge of a defendant actually enhances the reliability of that photo identification. So for those reasons and those findings of fact and conclusions of law, Mr. Alford's motion to suppress is hereby denied.

(ECF Doc. 6-2, pp. 216-19.)  Given these state court factual determinations, which are presumed correct under 28 U.S.C. § 2254(e)(1), the undersigned concludes that, even if Mr. Alford could demonstrate that the identification procedures used in his case were unnecessarily suggestive, the state court of appeals' determination that the trial court did not err in denying in his motion to dismiss was not contrary to or an unreasonable application of clearly established federal law because the "totality of the circumstances indicate[] that the evidence is reliable." *Hill*, 967 F.2d at 230 (citing *Biggers*, 409 U.S. at 199).

The Supreme Court has explained that under AEDPA "a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby*

*v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 103).  The "standard is difficult to meet" and "was meant to be" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)).  Given this "difficult to meet" standard, Mr. Alford has not shown that the state court of appeals' determination that the trial court did not err in denying his motion to suppress the identification evidence was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence.  Accordingly, the undersigned finds Ground One without merit.

## C.    Ground Two

In his second ground for relief, Mr. Alford argues that federal habeas relief is warranted because he suffered prejudice when an officer testifying at his trial opened a sealed evidence bag containing the victim's hat, something fell out of the hat onto the floor, and the officer testified the item was "actually a bone fragment"; he challenges the court of appeals decision affirming the trial court's denial of his motion for a new trial based on this issue.  (ECF Doc. 1, p. 6.)

Respondent argues first: "[t]o the extent that [Mr.] Alford's second ground for relief, alleging that the state court abused its discretion and misapplied Ohio Crim.R. 33, is premised on issues of state law, the claim is not cognizable for habeas review."  (ECF Doc. 6, p. 9.)  Next, Respondent argues: "[t]o the extent that [Mr.] Alford raises a claim regarding the alleged

violation of state evidentiary rules, this claim fails" because he "has not demonstrated that an alleged evidentiary error denied him a fundamentally fair trial" and a "claim of abuse of discretion by the state court judge" in denying his motion for new trial "is not sufficient to state a constitutional violation." (*Id*. at pp. 9-13.) Respondent additionally argues that Mr. Alford has not demonstrated that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law. (*Id*. at p. 13.)

For the reasons explained below, the undersigned concludes that Mr. Alford's second ground for relief is not cognizable on federal habeas review and/or is without merit. Accordingly, the undersigned recommends that the Court **DENY** Ground Two.

## 1. Federal Habeas Relief Based on State Law Evidentiary Rulings

As a general matter, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67–68 (citing 28 U.S.C. § 2241); s*ee also Lewis*, 497 U.S. at 780 ("[F]ederal habeas corpus relief does not lie for errors of state law[.]"); *Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted)).

A "state appellate court's interpretation of its own law and evidentiary rules, 'including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Chambers v. Artis*, No. 22-1247, 2022 WL 18542503, at *2 (6th Cir. Nov. 3, 2022), *cert. denied,* 143 S. Ct. 993 (2023) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam)); *see also Small v. Brigano,* No. 04-3328, 134 F. App'x 931, 936 (6th Cir. June 17, 2005) (indicating that habeas courts presume that the Ohio state courts correctly interpret Ohio

evidence law in their evidentiary rulings). Thus, "[i]n general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012).

Additionally, "a state trial court's alleged abuse of discretion, without more, is not a constitutional violation." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (citing *Sinistaj v. Burt*, 66 F.3d 804, 805, 808 (6th Cir. 1995)). Thus, a federal habeas court may review a denial of a motion for new trial "only for constitutional error." *Pudelski v. Wilson*, 576 F.3d 595, 610– 611 (6th Cir. 2009).

It is only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, [that] it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Additionally, "[t]o establish a constitutional due process claim, [a petitioner] must demonstrate that the trial court's denial of his motion for new trial was 'so egregious' that it violated his right to a fundamentally fair trial." *Pudelski*, 576 F.3d at 611. "[C]ourts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Bugh*, 329 F.3d at 512 (citing *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) ("Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (bracket in original)).

19

2.      State Court Adjudication of Motion for Mistrial

In its March 25, 2020 opinion affirming Mr. Alford's conviction and sentence, the court

of appeals analyzed his assignment of error alleging that the trial court abused its discretion

when it denied his motion for new trial as follows:

{¶16} In his second assignment of error, Mr. Alford argues that the trial court erred in denying his motion for a new trial. We disagree.

{¶17} Crim.R. 33(A) allows a defendant to move for a new trial when his substantial rights have been materially affected. Mr. Alford filed his motion pursuant to Crim.R. 33(A)(1)-(3), which provide that a new trial may be granted for any of the following causes materially affecting his substantial rights: (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial; (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state; or (3) Accident or surprise which ordinary prudence could not have guarded against. "By its terms, Crim.R. 33 does not require a hearing on a motion for a new trial, and this Court has consistently held that the decision to conduct a hearing is one that is entrusted to the discretion of the trial court." *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015-Ohio-5042, ¶ 20.

{¶18} This Court reviews a trial court's decision to deny a motion for new trial for an abuse of discretion. *State v. Pyle*, 9th Dist. Summit No. 28802, 2018-Ohio-3160, ¶ 47. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶19} Mr. Alford took issue with two separate incidents in his motion for a new trial. First, he argued that he suffered prejudice when an officer testifying at trial opened up a sealed evidence bag containing the victim's hat and a piece of the victim's skull unexpectedly fell out of the hat and onto the floor, in full view of the jury. The officer spontaneously picked up the item and stated, "That's actually a bone fragment." Defense counsel objected and, after a brief sidebar, the court sustained the objection and instructed the jury to disregard the officer's testimony regarding the supposed bone fragment falling from the hat. The court told the jurors that the officer was not qualified to make a determination about what the material was that fell from the hat, and again instructed them to disregard the officer's statement and to not consider it for any purpose. The court also denied counsel's oral motion for a mistrial.

20

{¶20} In denying Mr. Alford's motion for a new trial, the trial court found that it had promptly issued a curative instruction to the jury, juries are presumed to follow a court's instructions, and nothing in the record indicated that the jury did not follow the court's instructions. It also found that the officer's stray comment was not prejudicial and did not deprive Mr. Alford of a fair trial, as this was a murder case involving a victim being shot four times, including once in the head. The chief medical examiner testified as to the victim's cause of death, and several photographs of the victim's body were admitted into evidence. Thus, even if the jury was unable to disregard the officer's statement, the court determined it was merely cumulative of other evidence presented at trial.

{¶21} Mr. Alford argues on appeal that he was prejudiced because there was no way the jury could "unsee" the bone fragment and, unlike photographs or testimony describing details or injuries, a surprising display of a skull fragment risked arousing the jurors' sympathies, evoking a sense of horror, and appealing to an instinct to punish. Although it is most certainly irregular for something to fall from a murder victim's hat in the midst of a jury trial and for a testifying witness to then exclaim that it was a bone fragment that fell, Mr. Alford has not demonstrated that he was prejudiced by this unexpected incident. The State alleged that Mr. Alford murdered D.A. by shooting him multiple times, including once in the head, and the chief medical examiner testified that D.A. died from these gunshot wounds. Nevertheless, the trial court sustained defense counsel's immediate objection to the officer's statement as to what fell from the hat and then twice instructed the jury to disregard that statement. Jurors are presumed to follow the trial court's instructions, and Mr. Alford has not directed us to anything in the record indicating that the jury disregarded the court's curative instructions here. *See State v. Vactor*, 9th Dist. Lorain No. 02CA008068, 2003-Ohio-7195, ¶ 47. The trial court therefore did not err in denying Mr. Alford's motion for a new trial as to this ground for relief.

\*\*\*

{¶26} Upon review of the record, this Court concludes that the trial court did not abuse its discretion in denying Mr. Alford's motion for a new trial, as its decision was not unreasonable, arbitrary, or unconscionable. Neither the incident with the officer on the witness stand nor the incident with the jurors materially affected Mr. Alford's substantial rights. Accordingly, Mr. Alford's second assignment of error is overruled.

*Alford*, 2020 WL 1496185, at \*4-6; (ECF Doc. 6-1, pp. 116-21.)

As noted above, federal courts are limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States. *Estelle*, 502 U.S. at 67–68; s*ee also Lewis*,

497 U.S. at 780; *Engle*, 456 U.S. at 121 n.21.  Additionally, a claim that a state court abused its

discretion in denying a motion for new trial is not subject to federal habeas review, absent a showing of constitutional error. *Pudelski*, 576 F.3d at 610–11. Accordingly, to the extent that Mr. Alford seeks federal habeas relief on the basis that the trial court abused its discretion and/or misapplied Ohio Criminal Rule 33, the undersigned finds Ground Two is non-cognizable on federal habeas review.

As it relates to Mr. Alford's argument that he was prejudiced and denied a fair trial when the trial court denied his motion for new trial after the officer remarked that the item that fell out of the victim's hat was "actually a bone fragment" because the "officer was not qualified to make that statement," the state court of appeals considered this argument and found that the trial court did not err in denying the motion for new trial. (ECF Doc. 6-1, pp. 116-19, ¶¶ 16-21.) Federal habeas relief may not be granted unless Mr. Alford can establish either that the state court decision adjudicating his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181. Mr. Alford's Petition does not address or establish the foregoing and he did not file a Traverse. Moreover, the undersigned's own review of the state court of appeals' decision demonstrates the state court appeals' determination that the trial court did not err in denying the motion for mistrial was not contrary to or an unreasonable application of clearly established Federal law and was not based on an unreasonable determination of facts in light of the evidence presented in the state court.

In overruling Mr. Alford's assignment of error based on the officer's remarks regarding the item falling out of the victim's hat during his testimony, the state court of appeals explained:

Although it is most certainly irregular for something to fall from a murder victim's hat in the midst of a jury trial and for a testifying witness to then exclaim that it was a bone fragment that fell, Mr. Alford has not demonstrated that he was prejudiced by this unexpected incident. The State alleged that Mr. Alford murdered D.A. by shooting him multiple times, including once in the head, and the chief medical examiner testified that D.A. died from these gunshot wounds. Nevertheless, the trial court sustained defense counsel's immediate objection to the officer's statement as to what fell from the hat and then twice instructed the jury to disregard that statement. Jurors are presumed to follow the trial court's instructions, and Mr. Alford has not directed us to anything in the record indicating that the jury disregarded the court's curative instructions here. *See State v. Vactor*, 9th Dist. Lorain No. 02CA008068, 2003-Ohio-7195, ¶ 47. The trial court therefore did not err in denying Mr. Alford's motion for a new trial as to this ground for relief.

(ECF Doc. 6-1, pp. 118-19, ¶ 21.)

Mr. Alford has not shown that "the trial court's denial of his motion for new trial was 'so egregious' that it violated his right to a fundamentally fair trial." *Pudelski*, 576 F.3d at 611. Indeed, "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Bugh*, 329 F.3d at 512. Mr. Alford also has not shown the state court of appeals' determination was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of facts in light of the evidence.

Under AEDPA, to obtain federal habeas relief, Mr. Alford "'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby*, 565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103). *Bobby*, 565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103). Although what occurred was, as the state court of appeals acknowledged, "certainly irregular," the state court of appeals reasonably concluded based on the record before it that "the incident with the officer on the witness stand . . . [had] [not] materially affected Mr. Alford's substantial rights" and that the trial court did not err in denying the motion for new trial. (ECF Doc. 6-1, p. 121, ¶ 26.) That record,

as detailed by the court of appeals, included: an immediate objection by Mr. Alford's counsel, which the trial court sustained; curative jury instructions given by the trial court, with no indication that the instructions were disregarded; and presentation of other admissible evidence regarding the manner in which the victim was murdered, including the fact that the victim was shot once in the head.  (*Id*. at pp. 118-19, ¶ 21.)  Given this record and the high deference afforded a state court's adjudication of a claim on the merits, the undersigned cannot conclude that the state court of appeals' determination was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Bobby*, 565 U.S. at 24 (quoting *Harrington*, 562 U.S. at 103).  Accordingly, the undersigned finds Ground Two without merit.

## IV.    Recommendation

For the reasons set forth above, the undersigned recommends that the Court **DENY** Mr. Alford's Petition because both of his grounds for relief are not cognizable on federal habeas review and/or are without merit.


Dated: August 20, 2024

/s/ Amanda M. Knapp
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).